**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **STEWART TITLE GUARANTY COMPANY** | : | |
| 1360 Post Oak Road, Suite 100 | : | CIVIL ACTION |
| Houston, TX 77056 | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **LAW OFFICES of DAVID FLEISCHMANN, P.C.** | : | |
| 2233 Nostrand Avenue, Third Floor | : | |
| Brooklyn, NY 11210-3045 | : | |
| and | : | |
| **DAVID FLEISCHMANN, Esquire** | : | |
| 2233 Nostrand Avenue, Third Floor | : | |
| Brooklyn, NY 11210-3045 | : | |
| and | : No. |
| **ANDREW SELEVAN, Esquire** | : | |
| 83 South Street, Suite 302 | : | |
| Freehold, NJ 07728-2492 | : | |
| and | : | |
| **WORLD WIDE LAND TRANSFER, LLC** | : | |
| f/k/a **WORLD WIDE LAND TRANSFER, Inc.** | : | |
| 50 Harrison Street, Suite PH 446 | : | |
| Hoboken, NJ 07030 | : | |
| Defendants | : | |

**COMPLAINT**

Plaintiff Stewart Title Guaranty Company, by and though undersigned counsel, hereby files this Complaint against the above-named Defendants, and avers as follows:

**PARTIES**

1.  Plaintiff Stewart Title Guaranty Company (**"STGC"**) is a Texas corporation with its principal place of business located as stated above.

2.  STGC is a title insurance underwriter authorized to conduct business in New Jersey and throughout the United States.

1

2

3. Defendant Law Offices of David Fleischmann, P.C. (the **"Law Firm"**) is a New York professional corporation, with its principal place of business located as stated above.

4. Defendant David Fleischmann, Esquire (**"Fleischmann"**), is a member of the New York and New Jersey bars.

5. On information and belief, Fleischmann is a principal of the Law Firm.

6. Defendant Andrew Selevan, Esquire (**"Selevan"**) is a member of the New York and New Jersey bars.

7. Defendant World Wide Land Transfer, LLC, formerly known as World Wide Land Transfer, Inc. (**"World Wide"**) is a Pennsylvania limited liability company.

## JURISDICTION AND VENUE

8. The Plaintiff is a citizen of the State of Texas for the reasons set forth above.

9. On information and belief, Fleischmann resides in, and is a citizen of, the State of New York.

10. The Law Firm is a citizen of the State of New York for the reasons set forth above.

11. On information and belief, Selevan resides in, and is a citizen of, the State of New Jersey.

12. On information and belief, no member of World Wide is a citizen of the State of Texas.

13. Complete diversity of citizenship thus exists between the Plaintiff and each of the Defendants, within the meaning of 28 U.S.C. §1332(a)(1).

14. The matter in controversy exceeds the sum of $75,000.00, excluding interest and costs, within the meaning of 28 U.S.C. §1332(a), as hereinafter set forth in detail.

15. Venue is proper in this Court according to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims hereinafter set forth occurred within New Jersey.

## FACTUAL BACKGROUND

16. Over a million dollars is missing from two simultaneous mortgage closings which occurred on September 7, 2018. Only the Law Firm and Fleischmann know where the money went.

17. Over a million dollars was delivered by World Wide, the closing settlement agent, to the Law Firm for the purpose of satisfying existing mortgages on the properties being refinanced.

18. The Law Firm received the money but did not transmit the funds to satisfy the existing mortgages.

19. Fleischmann denies that his firm still holds the transferred funds in his trust account, but will not say to whom they were transmitted, or on what authority.

20. Only Attorney Fleischmann (or others employed by the Law Firm) can tell us what happened to the missing money.

## THE REFINANCE TRANSACTIONS

21. Seth Levine is an adult individual who – relevant to this matter – controlled more than 70 limited liability companies, each of which owned one or more apartment buildings, most located within the State of New Jersey.

22. The facts set forth in the previous paragraph were taken from a criminal "information" filed in this court at number 21-CR-234(sjw) on March 18, 2021, in a case entitled "USA v. Sean Levine". Mr. Levine has agreed to plead guilty to two of the charges contained in the information, and sentencing is now scheduled for October 5, 2021. Because neither Mr. Levine nor the entities described in the next paragraph are parties hereto, these facts are included only to give context to the remainder of the Complaint.

23. In the summer of 2018, Amboy LP Ventures, LLC (**"Amboy"**) and North Bergen Ventures, LLC (**"North Bergen"**) sought to refinance mortgages on the real properties that they owned, located at 285 Bertrand Avenue, Perth Amboy, NJ, and 1147 7th Avenue, North Bergen, NJ, respectively (each a **"Property"**) and collectively, the **"Premises"**).

24. Nexus Capital Investment, LLC (**"Nexus"**) agreed to extend mortgage loans to Amboy and to North Bergen (the **"Borrowers"**), in the amounts of $472,500.00 and $675,000.00, respectively (the **"Nexus Loans"**).

25. Copies of the Commitment Letters issued by Nexus are attached as **Exhibit "A"** and **"B"**.

26. The Nexus Loan transactions closed (the **"Closings"**) on September 9, 2018.

27. Copies of the recorded Nexus mortgages are attached as **Exhibits "C"** and **"D"**, respectively.

28. At closing, World Wide issued title insurance policies for the two mortgages evidencing the Nexus Loans (the **"Title Policies"**) underwritten by STGC, insuring each as a first lien secured by the respective Premises.

29. The Nexus Loans were immediately assigned to non-party PS Funding, Inc. (**"PS Funding"**).

30. Copies of the recorded Assignments from Nexus to PS Funding are attached as **Exhibits "E"** and **"F"**.

31. Upon the assignment of the Nexus loans to PS Funding, PS Funding became an "insured" under each of the Title Policies.

32. Defendant World Wide acted as both settlement agent and policy issuing agent for both of the Closings.

33. Defendant Selevan attended the Closings as counsel for the Borrowers.

## THE PRIOR MORTGAGES

34. At the time of the Closings, each of the properties comprising the Premises was encumbered by an existing mortgage (the "Prior Mortgages") in favor of PrivCap Funding, LLC (**"PrivCap"**).

35. At the Closings, Selevan provided World Wide with payoff instructions (the **"Selevan Payoff Instructions"**), so that the Prior Mortgages could be paid off and released from the Premises as part of the Closings.

36. Copies of the Selevan Payoff Instructions are attached as **Exhibits "G"** and **"H"**, respectively.

37. The Selevan Payoff Instructions directed that the payoff amounts due to PrivCap be sent to the Law Firm.

38. After the Closings, it was discovered that the Prior Mortgages had not been paid off and the Prior Mortgages remained as liens against the Premises.

## THE FORECLOSURES of the PRIOR MORTGAGES and THE PURCHASE of THOSE LOANS BY STGC

39. On May 13, 2020, PrivCap commenced actions to foreclose the Prior Mortgages.

40. The Amboy foreclosure was assigned docket number F-6096-20; the North Bergen foreclosure was assigned docket number F-6098-20.

41. PS Funding was made a party to each of the PrivCap foreclosures because it held a mortgage on each Property as a result of the Closings.

42. At or about the same time that PrivCap filed the foreclosure complaints – long after the Closings had been completed, and the funds sent to the Law Firm – World Wide learned that PrivCap had never received the payoff funds for either of its loans, and that the Prior Mortgages thus remained unsatisfied with lien priorities senior to those of the mortgages securing the Nexus loans.

43. Demand was made upon the Law Firm for return of the payoff funds, but they were not returned.

44. Shortly after learning that the Prior Mortgages had not been paid off, PS Funding made claims under the Title Policies to STGC, and STGC retained counsel to defend the priority of the insured mortgages held by PS Funding.

45. Shortly after PrivCap filed its foreclosure complaints, PrivCap's counsel issued a subpoena (in the Amboy foreclosure) to the Law Firm, seeking information about the disposition of the payoff funds.

46. Nexus objected vociferously to the subpoena and filed a Motion to Quash it.

47. A copy of the Motion to Quash is attached as **Exhibit "I"**.

48. PS Funding's response to the Motion to Quash is attached as **Exhibit "J"**.

49. Included as part of the response to the Motion to Quash is a Certification taken by Juan Polistico, Closing Coordinator for World Wide, dated July 15, 2020, which accurately recounts the sequence of events leading up to the commencement of the PrivCap foreclosures.

50. The Motion to Quash was withdrawn before a decision was rendered on it.

51. Because the mortgages securing the Nexus Loans were not first liens againston the respective Premises (for the reasons set forth above) STGC, pursuant to the terms of its Title Policies, tendered policy limits to PS Funding and took assignment of PS Funding's interests. This occurred in the fall of 2020.

52. As a direct and proximate result of Defendants' acts and omissions, STGC has suffered, and continues to suffer, substantial losses and damages as identified herein and as yet to be determined.

## COUNT I

### NEGLIGENCE against LAW FIRM, FLEISCHMANN and SELEVAN

53. The Plaintiff hereby incorporates the above paragraphs as though fully set forth again at length.

54. At all relevant times, Fleischmann was an agent of the Law Firm, acting within the course and scope of his employment or other relationship with the Law Firm.

55. Of the $1,006,950.00 in payoff funds described above, $455,750.00 was intended to pay off the prior mortgage on the Amboy property, and $551,200.00 was intended to pay off the prior mortgage on the North Bergen property.

56. Fleischmann and the Law Firm (including employees thereof whose identities are not presently known to the Plaintiff) were negligent in failing to remit the payoff funds to PrivCap to pay off the Prior Mortgages.

57. Selevan acted negligently by failing to confirm that the Selevan Payoff Instructions were genuine before furnishing them to World Wide.

58. As a result of the negligence described above, STGC paid $1,006,950.00 to resolve the title claims that PS Funding had made under the Title Policies (the **"Loss"**).

**WHEREFORE**, Plaintiff Stewart Title Guaranty Company demands judgment against Defendants Law Offices of David Fleischmann, P.C., David Fleischmann, Esquire, and Andrew Selevan, Esquire, jointly and severally, in an amount not less than $1,006,950.00, together with interest, other compensatory damages, consequential damages, attorney's fees and costs, and such further relief as this Court deems just and proper.

## COUNT II

## BREACH of CONTRACT AGAINST WORLD WIDE

59. The Plaintiff hereby incorporates by reference the above paragraphs as though fully set forth again at length.

60. On or about April 1, 2005, STGC and World Wide entered into a Title Insurance Underwriting Agreement (Non-Exclusive Form), a copy of which is attached as **Exhibit "K"** (the **"Agency Agreement"**).

61. Pursuant to, and subject to the terms of, the Agency Agreement, STGC appointed World Wide as its non-exclusive limited agent for the purpose of issuing insured closing letters,

title insurance commitments and title insurance policies in the name of STGC in New Jersey and other designated states.

62. Paragraph 3(a) of the Agency Agreement provides that World Wide "shall conduct its business in a sound and ethical manner and shall issue title policies according to recognized underwriting practices, the rules and instructions given by [STGC], and those rules and instructions imposed by the Department of Insurance or other regulatory body".

63. Paragraph 3(b) of the Agency Agreement requires that each title policy issued by World Wide "shall correctly reflect the status of title as of the date and time of said policy with appropriate exceptions as to liens, defects, encumbrances, and or objections disclosed by the search and examination of title or known by [World Wide] to exist."

64. Paragraph 4(e) of the Agency Agreement provides that World Wide "shall not without [STGC's] prior written consent insure over a title defect, lien, or encumbrance, regardless of any indemnity or deposit that World Wide shall obtain".

65. Paragraph 5 of the Agency Agreement pertains to the division of loss and loss expense, and provides in pertinent part that:

> "The term 'Loss' shall include the amount paid to or for the benefit of the insured as well as loss adjustment expense including any cost of defending the claim resulting in the loss.
>
>    *     *     *
>
> (b) On each such loss due to fraud or intentional act or omission of [World Wide] or its employees, representatives, or agents, or due to the negligence thereof; [World Wide] shall be liable to [STGC] for the entire amount of such loss including, but not limited to, attorneys' fees, litigation expenses, and costs of settlement negotiations. Such losses include but are not limited to:
>
>   (1) Failure of title plant to disclose matters causing loss.

      (2)      Failure to discover or report any instrument of record affecting title.

      (3)      Violations of escrow instructions.

      (4)      Failure to follow underwriting guidelines and/or instructions of [STGC].

      (5)      Failure to prepare a title policy which shows defects and matters affecting title disclosed in the title search or which should have been disclosed in the title search.

66. Pursuant to paragraph 5 of the Agency Agreement, World Wide is obligated to indemnify and reimburse STGC for the Loss.

67. World Wide has breached the Agency Agreement by, among other things, (a) failing to ensure that the Prior Mortgages were paid off and released of record as required by the title insurance commitment; and (b) failing upon demand to repay to STGC the amount of the Loss described above.

68. As a result of World Wide's breach of the Agency Agreement, World Wide is indebted to STGC in the amount of $1,006.950.00, plus interest, and the attorneys' fees and costs incurred by STGC in this action.

**WHEREFORE**, Plaintiff, Stewart Title Guaranty Company, respectfully requests the Court to enter judgment in its favor and against Defendant, World Wide Land Transfer, LLC f/k/a World Wide Land Transfer, Inc., in the amount of $1,006,950.00, plus interest, attorneys' fees and costs.

## COUNT III

### NEGLIGENCE (in the alternative) AGAINST WORLD WIDE

69. The Plaintiff hereby incorporates by reference the above paragraphs as though fully

set forth again at length.

70. World Wide acted negligently, and failed to exercise due care, when it transmitted the proceeds of the refinance transactions that were due PrivCap to the Law Firm's trust account.

71. World Wide acted negligently, and failed to exercise due care by, among other things, failing to ensure that PrivCap actually received the funds for the payoff and release of the Prior Mortgages and that PrivCap had authorized the payoff instructions which directed payment to be sent to the Law Firm.

72. As a result of World Wide's negligence, STGC suffered damages in the amount of $1,006.950.00.

**WHEREFORE**, Plaintiff, Stewart Title Guaranty Company, respectfully requests the Court to enter judgment in its favor and against Defendant, World Wide Land Transfer, LLC f/k/a World Wide Land Transfer, Inc., in the amount of $1,006,950.00, plus interest and costs.

## COUNT IV

### CONVERSION (in the alternative) AGAINST LAW FIRM and FLEISCHMANN

73. The Plaintiff hereby incorporates the above paragraphs as though fully set forth again at length.

74. Upon information and belief, the Law Firm is no longer in possession of all or a portion of the payoff funds.

75. Upon information and belief, the Law Firm transferred all or a portion of the payoff funds to others shortly after receiving those funds.

76. The actions of the Law Firm and Fleischmann constituted a conversion of the payoff funds.

**WHEREFORE**, Plaintiff, Stewart Title Guaranty Company, respectfully requests the Court to enter judgment in its favor and against Defendants Law Offices of David Fleischmann, P.C., and David Fleischmann, Esquire, jointly and severally, in an amount not less than $1,006,950.00, plus interest, attorneys' fees and costs.

## COUNT V

### FRAUD (in the alternative) AGAINST LAW FIRM, FLEISCHMANN and SELEVAN

77. The Plaintiff hereby incorporates by reference the above paragraphs as though fully set forth again at length.

78. Selevan published the Selevan Payoff Instructions to World Wide, PS Funding and others.

79. The Selevan Payoff Instructions were false, in that they directed that the funds due PrivCap were to be sent to the Law Firm rather than to PrivCap. as PrivCap's true instructions had directed.

80. Selevan knew or should have known when he published the Selevan Payoff Instructions that they were false.

81. Selevan intended that others, including but not limited to, the Plaintiff, World Wide and Nexus, would rely on the false Selevan Payoff Instructions.

82. World Wide, Nexus, STGC and others in fact relied upon the Selevan Payoff Instructions in proceeding with the Closing.

83. Upon information and belief, Fleischmann and the Law Firm knew that the Selevan Payoff Instructions were false but took no action to prevent their use.

84. As a result of the foregoing, the Plaintiff was damaged as hereinabove described.

**WHEREFORE**, Plaintiff, Stewart Title Guaranty Company, respectfully requests the Court to enter judgment in its favor and against Defendants Law Offices of David Fleischmann, P.C., David Fleischmann, Esquire, and Andrew Selevan, Esquire, jointly and severally, in an amount not less than $1,006,950.00, plus interest, attorneys' fees and costs.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By: */S/ William J. Levant, Esquire*
William J. Levant, Esquire (020151988)
(610)941-2474
(610)684-2020 – Telecopier
wlevant@kaplaw.com

and

Michael P. Coughlin, Esquire (004911989)
(610)941-2456
(610)684-2009 – Telecopier
mcoughlin@kaplaw.com
1800 Chapel Avenue West, Suite 320
Cherry Hill, NJ 08002
Attorneys for Plaintiff

Date: September 8, 2021

## DESIGNATION OF TRIAL COUNSEL

William J. Levant and Michael P. Coughlin, Esquires, are designated as trial counsel in the above captioned action pursuant to Rule 4:25-4.

                                **KAPLIN STEWART MELOFF REITER & STEIN P.C.**
                                Attorneys for Plaintiff

By:   */S/ William J. Levant, Esquire*
        William J. Levant, Esquire
        Michael P. Coughlin, Esquire

Date: September 8, 2021

## CERTIFICATION PURSUANT TO R. 4:5-1

Pursuant to R. 4:5-1, I hereby certify that the matter in controversy is not the subject of any other action pending in any Court, and no other action or arbitration proceeding is contemplated. Further, to the best of my knowledge and belief, there is no other party who should be joined in this action at this time, though there are other potential defendants who may be joined pending the outcome of initial discovery.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                **KAPLIN STEWART MELOFF REITER & STEIN P.C.**
                                Attorneys for Plaintiff

By:   */S/ William J. Levant, Esquire*
        William J. Levant, Esquire
        Michael P. Coughlin, Esquire

Date : September 8, 2021

## CERTIFICATION PURSUANT TO R. 1:38-7(c)(2)

Pursuant to R. 1:38-7(c)(2), I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from subsequent papers submitted to the Court.

                            **KAPLIN STEWART MELOFF REITER & STEIN P.C.**
                            Attorneys for Plaintiff

By:    */S/ William J. Levant, Esquire*
            William J. Levant, Esquire
            Michael P. Coughlin, Esquire

Date: September 8, 2021