<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY,<br><br>                Plaintiff,<br><br>v.<br><br>LAW OFFICES OF DAVID FLEISCHMANN, et al.,<br><br>                Defendants. | Civil Action No. 3:21-16713-GC-TJB<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

      This matter comes before the Court upon Defendants Law Offices of David Fleischmann, P.C. (the "Fleischmann Law Firm"), and David Fleischmann, Esq.'s ("Fleischmann") (collectively, "Fleischmann Defendants") Motion to Dismiss Plaintiff Stewart Title Guaranty Company's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice. (*See* Mot., ECF No. 13-2.) Plaintiff opposed (*see* Opp'n, ECF No. 39), and Defendants replied (*see* Reply, ECF No. 41). The Court has reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. Based on the reasons set forth below and for good cause shown, the Fleischmann Defendants' Motion to Dismiss is **GRANTED**.

1

I.  **BACKGROUND**

According to Plaintiff's Amended Complaint, in the summer of 2018, Amboy LP Ventures, LLC ("Amboy"), and North Bergen Ventures, LLC ("North Bergen"), sought to refinance the mortgages they held on properties located in North Bergen and Perth Amboy (collectively, the "Premises"). (Am. Compl. ¶ 23., ECF No. 4.) Nexus Capital Investment, LLC ("Nexus") "agreed to extend mortgage loans to Amboy and to North Bergen ([collectively,] the "Borrowers"), in the amounts of $472,500.00 and $675,000.00." (*Id.* ¶ 24.) On September 9, 2018, the Nexus loan transactions closed (*id.* ¶ 26), and World Wide Land Transfer, Inc. ("World Wide"), issued title insurance policies (the "Title Policies") for the two mortgages, which were underwritten by Plaintiff, "insuring each as a first lien secured by the respective Premises" (*id.* ¶ 28). The Nexus loans were assigned to non-party PS Funding, Inc., who then became an "insured" under each of the Title Policies. (*Id.* ¶¶ 29, 31.) World Wide acted as both a "settlement agent and policy issuing agent for both of the Closings." (*Id.* ¶ 32.)

At the time of the Closings, each of the two properties were encumbered by existing mortgages ("Prior Mortgages") held by PrivCap Funding, LLC ("PrivCap"). (*Id.* ¶ 34.) "At the Closings, [Defendant Andrew Selevan, counsel for the Borrowers,] provided World Wide with payoff instructions (the "Selevan Payoff Instructions"), so that the Prior Mortgages [held by PrivCap] could be paid off and released from the Premises as part of the Closings." (*Id.* ¶ 35.) These instructions directed that the payoff amounts due to PrivCap be sent to the Fleischmann Law Firm. (*Id.* ¶ 37.) The Selevan Payoff Instructions are appended to the Original Complaint (ECF No. 1) as Exhibits G and H (ECF No. 1-2).

The Amended Complaint alleges that after the Closings, it was "discovered that the Prior Mortgages [held by PrivCap] had not been paid off and the Prior Mortgages remained as liens

against the Premises." (Am. Compl. ¶ 38.) The Amended Complaint further alleges that "[o]ver a million dollars was delivered by World Wide, the closing settlement agent, to the [Fleischmann] Law Firm for the purpose of satisfying existing mortgages on the properties being refinanced," and that "[t]he [Fleischmann] Law Firm received the money but did not transmit the funds to satisfy the existing mortgages." (*Id.* ¶¶ 17-18.)

On May 13, 2020, PrivCap commenced foreclosure actions on the Prior Mortgages. (*Id.* ¶ 39.) At or around this time, "World Wide learned that PrivCap had never received the payoff funds for either of its loans, and that the Prior Mortgages thus remained unsatisfied with lien priorities senior to those of the mortgages securing the Nexus loans." (*Id.* ¶ 42.) In response, a demand was made upon the Fleischmann Law Firm to return the funds, but they were not returned. (*Id.* at ¶ 43.) Ultimately, according to the Amended Complaint, "[o]ver a million dollars is missing from two simultaneous mortgage closings which occurred on September 7, 2018." (*Id.* ¶16.) Plaintiff alleges that only the Fleischmann Defendants know where the money has gone. (*Id.*)

The Amended Complaint initially included a negligence claim, a conversion claim, and a fraud claim against Defendants (*id.* ¶¶ 53-58, 73-84), but the parties later consented to dismissal of the conversion claim (ECF No. 30). Defendant World Wide filed an Answer and Crossclaims, seeking contribution and indemnification in the event that some or all of the allegations in the Amended Complaint are determined to be true. (Answer 9, ECF No. 5.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a *prima facie* claim, a complaint must include "a short and plain statement of the claim showing that

the pleader is entitled to relief,'" Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated by Twombly*, 550 U.S. 544). The reviewing district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

The Third Circuit uses a three-step process to evaluate a complaint's sufficiency. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). This divides the district court's analysis into three discrete segments: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.*

Typically, it is inappropriate for a reviewing court to consider extraneous documents—that is, documents not attached to the complaint or expressly incorporated therein—unless the court converts the motion to dismiss into a motion for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). This tenet runs parallel to another, requiring the court to analyze the complaint "in its entirety," including "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference,

and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 & Supp. 2007)). Additionally, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (collecting cases). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (citing *Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984), *cert. denied*, 469 U.S. 831). Finally, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir 1991)).

### III. DISCUSSION

#### A. Negligence (Count I)

The Amended Complaint alleges that Fleischmann was an "agent of the Law Firm," and that Fleischmann and the Law Firm were negligent in failing to remit the $1,006,950 in payoff funds to PrivCap to pay off the Prior Mortgages. (Am. Compl. ¶ 56.) To sustain a negligence claim, a plaintiff must establish "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Kraft v. Wells Fargo & Co.*, Civ. No. 16-05729, 2019 WL 3453271, at *5 (D.N.J. July 31, 2019) (quoting *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010)).

To determine whether a duty of care was owed, courts will look at several factors such as foreseeability and fairness. "Foreseeability as it impacts duty determinations, refers to 'the knowledge of risk to be apprehended.'" *Jasper v. Bank of Am. Corp.*, Civ. No. 20-2842, 2020 WL 5868849, at *2 (D.N.J. Oct. 2, 2020) (quoting *Clohesy v. Food Circus Supermarkets, Inc.*, 694 A.2d 1017, 1021 (N.J. 1997)). The presence or absence of foreseeability is not dispositive as to whether a duty of care exists, but "[s]ubsumed in the concept of foreseeability are many of the concerns we acknowledge as relevant to the imposition of a duty: the relationship between the plaintiff and the tortfeasor, the nature of the risk, and the ability and opportunity to exercise care." *Id.* (quoting *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1294 (N.J. 1994)).

Pursuant to New Jersey law, the threshold inquiry of whether a person owes a duty of reasonable care towards another, "turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Kraft*, 2019 WL 3453271, at *5 (quoting *Holmes*, 598 F.3d at 118). Ultimately, "[t]he determination of whether a duty of care exists is 'quintessentially a question of law for the court.'" *Wilson v. Consol. Rail Corp. (In re Paulsboro Derailment Cases)*, Civ. No. 13-784, 2013 WL 5530046, at *2 (D.N.J. Oct. 4, 2013) (quoting *Highlands Ins. Co. v. Hobbs Grp.*, LLC, 373 F.3d 347, 351 (3d Cir. 2004)).

The Court must determine whether the Amended Complaint contains sufficient factual allegations to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Based on the Court's review of Plaintiff's Amended Complaint, the Court finds that Plaintiff fails to sufficiently allege that the Fleischmann Defendants owed Plaintiff a duty of care to support a negligence claim.

The Amended Complaint alleges that Amboy and North Bergen refinanced mortgages held on the Premises using Nexus. (Am. Compl. ¶¶ 23-27.) Before the mortgages were refinanced, they were held by PrivCap. (*Id.* ¶ 34.) After closing on the Nexus loans, World Wild insured the newly refinanced loans (*id.* ¶ 28), which were then assigned to PS Funding (*id.* ¶ 29). After the mortgages were refinanced by Nexus, the Prior Mortgages needed to be "paid off and released from the Premises as part of the Closings." (*Id.* ¶ 35.) Accordingly, at the Closings, counsel for the Borrowers, Selevan, directed World Wide to submit payment to the Fleischmann Law Firm to satisfy the outstanding Prior Mortgages with PrivCap. (*Id.* ¶¶ 33-36.) Selevan also directed World Wide to submit the payoff value to the Fleischmann Law Firm, an event which does not seem to be in dispute. (*Id.* ¶¶ 34-37.) The Amended Complaint asserts that "[d]emand was made upon the [Fleischmann] Law Firm for return of the payoff funds, but they were not returned." (*Id.* ¶ 43.)

The Amended Complaint does not, however, allege any relationship between the Fleischmann Defendants and Plaintiff that would substantiate a finding that the Fleischmann Defendants owed a duty of care to Plaintiff. The Amended Complaint does not allege that either Fleischmann or the Fleischmann Law Firm was retained as counsel for Plaintiff or for any other party involved in the transaction. The Amended Complaint also does not allege that either Fleischmann or the Fleischmann Law Firm owed a fiduciary duty to Plaintiff.[1] The Amended Complaint alleges no relationship at all between Plaintiff and Fleischmann or the Fleischmann Law Firm.

---

[1] Plaintiff's Opposition seems to imply that the Fleischmann Defendants owed a "fiduciary duty to the rightful owner [of the funds] in question – PrivCap." (Opp'n 7.) However, neither Plaintiff's Original Complaint nor Plaintiff's Amended Complaint include any allegations related to a cause of action for breach of a fiduciary duty. Therefore, the Court declines to consider the argument raised in Plaintiff's brief. *See Cheeseman v. Baxter Healthcare Corp.*, Civ. No. 08-4814, 2009 WL 1351676, at *4 (D.N.J. May 13, 2009) ("[A] plaintiff may not amend [the] complaint through arguments in [a] brief.").

Plaintiff relies on *Dynasty Bldg. Corp. v. Ackerman*, 870 A.2d 629 (N.J. Super. Ct. App. Div. 2005), to assert that "if a tort plaintiff can establish ownership of funds in the attorney's trust account, a fiduciary relationship exists, and an unauthorized distribution of those funds will constitute an actionable breach of the duty arising thereunder." (Opp'n 4.) However, *Dynasty Bldg. Corp.* states that "[i]f in fact the plaintiffs can establish that it was their funds, a fiduciary relationship developed between them and [the lawyer] even though he did not represent them in any matter." 870 A.2d at 633. Therefore, Plaintiff's argument is unavailing as Plaintiff has not alleged any ownership interest in the funds that were sent to the Fleischmann Law Firm. To the contrary, Plaintiff notes that "[w]hen the $1,006,950.00 was deposited into the Law Firm's Trust Account, the Fleischmann Defendants knew that the money did not belong to them. Therefore, they were under a fiduciary duty to the *rightful owner – PrivCap* – to distribute those funds as the owner intended." (Opp'n 7 (emphasis added).) If, as Plaintiff asserts, PrivCap is the rightful owner of the funds at issue, any possible duty would be owed to PrivCap. Without more, the Court cannot find a basis to conclude that Plaintiff, whose relationship to the transaction appears to be that of underwriters of the title insurance policies issued by World Wide (Am. Compl. ¶ 28), has established a duty of care owed by the Fleischmann Defendants to Plaintiff.

**B. Fraud (Count V)**

The Amended Complaint also alleges that the Selevan Payoff Instructions were published to "World Wide, PS Funding, and others." (*Id.* ¶ 78.) The Amended Complaint further asserts that the Selevan Payoff Instructions were "false, in that they directed that the funds due PrivCap were to be sent to the Law Firm rather than to PrivCap." (*Id.* ¶ 79.) Finally, it is alleged that "[u]pon information and belief, Fleischmann and the Law Firm knew that the Selevan Payoff Instructions were false but took no action to prevent their use." (*Id.* at ¶ 83.)

8

Allegations of fraud require more detailed pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 (3d Cir. 2015) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). The particularity standard ensures that "defendants [are placed] on notice of the precise misconduct with which they are charged, and [are safeguarded] against spurious charges of immoral and fraudulent behavior." *Id.* at 85 (quoting *Lum*, 361 F.3d at 223-24). To satisfy this heightened pleading standard, a plaintiff need not provide "every material detail of the fraud such as date, location, and time." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

But still, in applying Rule 9(b), "courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud.' . . . Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). At a minimum, the plaintiff must provide one of two things: either (1) "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue,'" *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (quoting *In re Rockefeller Ctr. Properties*, 311 F.3d at 217); or (2) some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud," *Heyman v. CitiMortgage, Inc.*, Civ. No. 14-1680, 2015 WL 5921199, at *6 (D.N.J. Oct. 9, 2015) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984)).

"In New Jersey, the five elements of common law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008) (internal citation and quotation omitted). Further, "[f]or an omission to have constituted fraud, the defendant must have had a duty to disclose the withheld information." *Heyman*, 2015 WL 5921199, at *7.

Here, the Court finds that the Amended Complaint does not sufficiently allege fraud to survive a motion to dismiss. Plaintiff has failed to plead the first element of a common law fraud claim: material misrepresentation or omission. Plaintiff relies on Paragraphs 35, 37, and 83 of the Amended Complaint in asserting that the Fleischmann Defendants engaged in fraud. (Opp'n 8; Am. Compl. ¶¶ 35, 37, 83.) The Amended Complaint states: "At the Closings, Selevan provided World Wide with payoff instructions (the "Selevan Payoff Instructions"), so that the Prior Mortgages could be paid off and released from the Premises as part of the Closings." (Am. Compl. ¶ 35.) It further states that "[t]he Selevan Payoff Instructions directed that the payoff amounts due to PrivCap be sent to the Law Firm." (*Id.* ¶ 37.) These allegations do not include any misrepresentations or omissions made by the Fleischmann Law Firm or Fleischmann.

The remaining allegation Plaintiff relies on states that "[u]pon information and belief, Fleischmann and the Law Firm knew that the Selevan Payoff Instructions were false but took no action to prevent their use." (*Id.* ¶ 83.) The Court concludes that this allegation alone does not provide the necessary particularity required by Rule 9(b) to sustain a fraud claim. Plaintiff's allegation provides no detail about what misrepresentations were made by the Fleischmann

Defendants, how they were made, or to whom they were made. And there are no allegations of any misrepresentations or omissions actionable based on a duty of care owed to Plaintiff.

The Court notes that Plaintiff also attempts to rely on the attached Certification of Juan Polistico, appended to the Amended Complaint as Exhibit J, to support the assertion that Polistico called the Law Firm and was advised that the Selevan Payoff instructions were correct. (Opp'n 8; "Polistico Cert.," ECF No. 1-2 at 67-69.) Polistico avers that he "called the office of David Fleischmann, Esq. to confirm the wiring instructions. [Polistico] spoke with Aaron Schlusselberg, Esq. [("Schlusselberg")] an associate of Mr. Fleischmann. [Polistico] told Mr. Sclusselberg that [he] was calling to confirm the wire instructions for satisfaction of the PrivCap mortgages. Mr. Schlusselberg confirmed that the wire instructions provided on each of the payoff statements was correct." (Polistico Cert. ¶ 8.)

The Court must point out that Polistico is not mentioned at all in the Amended Complaint, as Plaintiff acknowledges in requesting leave to file another amended complaint. (Opp'n 8-9.) But even considering the Polistico Certification, Plaintiff still has not pled the elements of a fraud claim, because Plaintiff does not plead that Mr. Schlusselberg—who is also not identified in the Amended Complaint—had knowledge or belief of the falsity of the statement. *See Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136, 140 (3d Cir. 2019) (concluding that the plaintiff did not sufficiently plead a fraud claim in part because he "did not allege any particularized facts which demonstrate Appellee knew [of the falsity at issue]"); *see also RBC Bank (USA) v. Petrozzini*, Civ. No. 12-155, 2012 WL 1965370, at *3 (D.N.J. May 31, 2012) (concluding that the defendants' counterclaim for fraud was not sufficiently plead in part because the "counterclaim provides little by way of factual support or any particularity," and specifically noting that the defendants did not "set forth sufficient facts suggesting that . . . [p]laintiff knew of the falsity of the representations").

### C. World Wide's Crossclaims for Contribution and Indemnification

Finally, the Court will dismiss World Wide's crossclaims for contribution and indemnification. The crossclaim for contribution states that World Wide seeks contribution from the Fleischmann Defendants "[s]hould it be determined . . . that some or all of the allegations of the plaintiff's Amended Complaint are true." (Answer 9.) Similarly, World Wide asserts a crossclaim for indemnification "if answering defendant is found liable with respect to plaintiff's alleged injuries and damages." (*Id.*) The crossclaims do not provide any detail or particularity as to the nature of the relationship between the Fleischmann Defendants and World Wide that would substantiate crossclaims for indemnification and contribution, nor do the crossclaims provide any factual assertions against the Fleischmann Defendants.

As the Court has concluded that the Amended Complaint does not properly plead claims for negligence or for fraud, the crossclaims against the Fleischmann Defendants for contribution and indemnification are dismissed.

"While the crossclaims do not need to contain 'detailed factual allegations,' they must set forth sufficient facts to raise [a cross-claimant's] 'right to relief above the speculative level.'" *Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, Civ. No. 07-3827, 2010 WL 1379751, at *5 (D.N.J. Mar. 30, 2010) (quoting *Twombly*, 550 U.S. at 555). "Indemnification and contribution claims must contain allegations averring how or why the defendants were negligent and partially liable." *Davidson v. Cornerstone Bank*, Civ. No. 10-2825, 2011 WL 677321, at *5 (D.N.J. Feb. 16, 2011).

Here, as described above, the crossclaims fail to state a claim for which relief can be granted and thus shall be dismissed without prejudice. *See Estate of Russick v. Koenig*, Civ. No. 13-07773, 2019 WL 13163796, at *2 (D.N.J. Oct. 10, 2019) (finding that a cross-claimant had not

"articulated any facts that support his legal conclusion" that indemnification or contribution was warranted and noting that a mere formulaic recitation of the elements of the claims for contribution and indemnification is insufficient).

IV. **CONCLUSION**

The Court, accepting the allegations in Plaintiff's Amended Complaint as true, concludes that Plaintiff's Amended Complaint fails to meet the pleading requirements for its claims, and thus **GRANTS** the Fleischmann Defendants' Motion to Dismiss.

Plaintiff's moving papers indicate that it intends to seek leave to file a Second Amended Complaint. (Opp'n 9.) Plaintiff shall have thirty (30) days in which to file a Second Amended Complaint to the extent Plaintiff can cure the deficiencies identified in this Memorandum Opinion. An appropriate Order will follow.

Dated: April 28, 2023

_____
GEORGETTE CASTNER, U.S.D.J.