NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **STEWART TITLE GUARANTY COMPANY** | : | **Civil Action No. 21-16713 (GC) (TJB)** |
| | : | |
| **Plaintiff,** | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| **LAW OFFICES OF DAVID FLEISCHMANN, PC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Defendant World Wide Land Transfer, LLC's ("World Wide") motion for leave to file a Third-Party Complaint pursuant to Fed. R. Civ. P. 14(a) against former Defendants Law Offices of David Fleischmann, P.C. and David Fleischmann, Esq. (collectively, "Fleischmann Defendants").   (Docket Entry No. 54).   Plaintiff Stewart Title Guaranty Company ("STGC") does not oppose World Wide's motion. The non-party Fleischmann Defendants oppose World Wide's motion.  (Docket Entry No. 56).  For the reasons set forth more fully below, World Wide's motion for leave to file a Third-Party Complaint is **DENIED.**

## I.   BACKGROUND AND PROCEDURAL HISTORY

As the factual background is well known to both the parties, it is not restated at length herein but instead is summarized as follows:

According STGC's Amended Complaint, this action arises from a transaction born from a refinancing arrangement sought by Borrowers, Amboy LP Ventures, LLC ("Amboy") and North

Bergen Ventures, LLC ("North Bergen"), in the summer of 2018 for mortgages on two properties. (Am. Compl., at ¶ 23; Docket Entry No. 4).   Non-party Nexus Capital Investment ("Nexus") offered mortgage loans for both properties, in the amounts of $472,500.00 to Amboy and $675,00.00 to North Bergen.  (*Id.* at ¶ 24.)  Both properties were encumbered by prior mortgages held by PrivCap Funding, LLC ("PrivCap").  (*Id.* at ¶ 34.)

On September 9, 2018, the Closing was executed for both loans, with Defendant Andrew Selevan, Esq. ("Selevan") acting as counsel for the Borrowers.  (*Id.* at ¶ 26, 33.)  Defendant World Wide issued title insurance policies for both properties and acted as settlement agent at closing. (*Id.* at ¶ 32.)  Plaintiff STGC underwrote the title insurance policies issued by World Wide.  (*Id.* at ¶ 28.)

Following closing, the Nexus-issued loans were assigned to non-party PS Funding, Inc., ("PS Funding"), which became an insured under the World Wide-issued and STGC-underwritten title policies.  (*Id.* at ¶¶ 29, 31.)  As these title insurance policies guaranteed each Nexus loan assigned to PS Funding as a first position lien secured by the respective premises, it was understood by Plaintiff STGC and Defendant World Wide that Defendant Selevan would issue payoff instructions directing the transfer of funds to PrivCap for the purpose of settling the prior mortgages against the properties.  (*Id.* at ¶ 35); (World Wide's Br. in Supp. of Mot. for Leave to File Third-Party Compl. at 3, Docket Entry No. 54-3) ("World Wide's Mov. Br.").  The funds were not transferred to PrivCap by the Fleischmann Defendants; a fact which World Wide alleges that it became aware of in May of 2020.  (*See* Am. Compl., at ¶ 38); (World Wide's Mov. Br., at 5, 9).

On May 13, 2020, having not received the funds intended for payoff of the original mortgages, PrivCap commenced foreclosure proceedings against both properties, naming PS

Funding as a party.  (Am. Compl., at ¶¶ 39, 41; Docket Entry No. 4).  In the Fall of 2020, STGC "tendered policy limits to PS Funding and took assignment of PS Funding's interests," because the Nexus loans were not first liens against the premises of the properties, as guaranteed in the terms of STGC's Title Policies ("Agency Agreement").  (*Id*. at ¶ 51.)  Seeking to be made whole for the expense incurred in taking assignment of the Nexus mortgage interests, STGC filed this suit, demanding $1,006,950.00 in damages.  (*Id.* at ¶ 52-84.)

On September 13, 2021, STGC filed an amended complaint initiating the underlying action against Defendants World Wide, the Fleischmann Defendants, and Andrew Selevan, asserting claims of negligence, conversion, and fraud against the Fleischmann Defendants and Selevan (Counts I, IV, V) and claims of breach of contract and negligence against Defendant World Wide (Counts II, III).  (*Id*. at ¶¶ 3-7, 53-84.)  Count IV, alleging conversion as to the Fleischmann Defendants, was dismissed by way of a Consent Order.  (Docket Entry No. 30).

On September 27, 2021, World Wide filed an Answer to the Amended Complaint.  (Docket Entry No. 5).  In their Answer, World Wide raised six affirmative defenses and asserted two Crossclaims for Contribution and Indemnification against the Fleischmann Defendants and Selevan.  (World Wide's Ans., at 8-9; Docket Entry No. 5).  As to Contribution, World Wide argued that, if they were found liable to STGC, they would seek contribution from their co-defendants under the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5-5.1, and the New Jersey Joint Tortfeasors Act, N.J.S.A. 2A:53A-1.  (*Id*. at 9.)  As to Indemnification, World Wide argued that, if they were found liable to STGC, that liability would be "secondary, imputed and vicarious," to their co-defendants' liability to STGC.  (*Id*.)

On October 28, 2021, the Fleischmann Defendants filed a Motion to Dismiss all claims against them: both STGC's claims and World Wide's crossclaims.  (Fleischmann Defs.' Mot. to

Dismiss; Docket Entry No. 13).  In their Motion to Dismiss, the Fleischmann Defendants argued that they owed no duty of care to non-client parties, including STGC and World Wide, and that Fed. R. Civ. P. 12(b)(6) and 9(b) barred any finding of liability to STGC and World Wide.  (*Id*. at 1.)  STGC opposed the Fleischmann Defendants' Motion to Dismiss (Docket Entry No. 39), to which the Fleischmann Defendants replied (Docket Entry No. 41).

On April 28, 2023, the District Court entered a Memorandum Opinion and Order granting Fleischmann's Motion to Dismiss in its entirety.  (Docket Entry Nos. 44 and 45).  Regarding the Crossclaims for Contribution and Indemnification made by World Wide, the District Court found that the crossclaims contained no detail as to the nature of relationship between the Fleischmann Defendants and World Wide that would "substantiate crossclaims for indemnification and contribution, nor do the crossclaims provide any factual assertions against the Fleischmann Defendants." (Mem. Op. of 04/28/2023, at 12; Docket Entry No. 44) ("Mem. Op. of 04/28/2023").

On December 7, 2023, World Wide filed the instant Motion for Leave to File a Third-Party Complaint against the Fleischmann Defendants.  (Docket Entry No. 54).  On December 22, 2023, the Fleischmann Defendants filed an Opposition to World Wide's Motion for Leave to File a Third-Party Complaint.  (Docket Entry No. 56).

## SUMMARY OF ARGUMENTS

### A.  World Wide's Arguments in Support of its Motion for Leave to File a Third-Party Complaint

World Wide seeks leave to file a Third-Party Complaint against former co-defendants, the Fleischmann Defendants.  (World Wide's Mov. Br., at 1).  The proposed Third-Party Complaint includes three counts against the Fleischmann Defendants for negligence, conversion, and fraud, and seeks contribution and indemnification from the proposed Third-Party Defendants in the event

that World Wide is found liable to STGC.[1]  (World Wide's Proposed Third Party Compl., Ex. E, at 3-5; Docket Entry No. 54-11) ("World Wide's Proposed Third-Party Compl.").  In support of their motion, World Wide advances two arguments: that impleader is to be permitted unless it is clearly unmeritorious or will cause undue delay or disadvantage, and that the Fleischmann Defendants owed a duty of care to World Wide, which was breached.  (World Wide's Mov. Br, at 6-7).

With respect to the legal standard of impleader, World Wide highlights the language of Fed. R. Civ. P. 14(a)(1), which stipulates that a defendant may implead "a nonparty who is or may be liable to it for all or part of the claim against it."  (*Id*. at 6.) According to World Wide, so long as they can show: (1) that "Mr. Fleischmann is liable to World Wide"; (2) that their third-party complaint does not contend that Fleischmann is liable to STGC in World Wide's stead; and (3) that the proposed impleader would "delay or disadvantage the existing action," they should be permitted to file their third-party complaint.  (*Id*. at 7.)

As to the duty owed to World Wide and breached by the Fleischmann Defendants, World Wide argues that attorneys may owe a duty of care to non-client parties when their actions are intended to induce or invite reliance on the attorney's work.  (*Id*.)  World Wide contends that the measure of when an attorney should be found to have a duty to a non-client "is a fact-specific determination" and that the Court must consider the risk of extending the duty against the potential public interest in any individual instance.  (*Id*. at 8.)  World Wide offers several examples of

---

[1] The Court notes that these claims, except for the claim of conversion, are the same claims raised by STGC, the original plaintiff, against the Fleischmann Defendants and dismissed by the District Court in its prior Memorandum Opinion and Order. (*See generally*, Am. Compl.; Docket Entry No. 4); (*see also* Mem. Op. of 04/28/2023); (*see also* Order of 04/28/2023; Docket Entry No. 45). As noted, STGC's claim of conversion against the Fleischmann Defendants was dismissed pursuant to the Consent Order of May 26, 2022.  (Docket Entry No. 30).

situations in which lawyers were found to owe a duty of care despite the absence of contractual, fiduciary, or attorney-client obligation when non-clients acted in reliance on those attorneys' representations.[2]  (*Id.*)

World Wide argues that the Fleischmann Defendants owed a duty of care to World Wide, "because World Wide reasonably relied on Mr. Fleischmann to send to PrivCap or its assignee the funds forwarded by World Wide for the payoff of the PrivCap mortgages."  (*Id.* at 9.)

## B. The Fleischmann Defendants' Arguments in Opposition of World Wide's Motion for Leave to File a Third-Party Complaint

In opposition, the Fleischmann Defendants contend that the World Wide's motion should be denied on any of three grounds.  (Fleischmann Defs.' Mem. in Opp'n to Mot. for Leave to File Third-Party Compl., at 1-2; Docket Entry No. 56) ("Fleischmann Defs.' Opp'n Br.").

First, the Fleischmann Defendants argue that the motion is an effort to circumvent the District Court's April 28, 2023 Memorandum Opinion. (*Id.*)   To support this contention, the Fleischmann Defendants cites the Law of the Case Doctrine, which requires that previously

---

[2] *See Atlantic Paradise v. Perskie, Nehmad,* 284 N.J. Super. 678 (App. Div. 1995), *certif. den.*, 143 N.J. 518 (1996) (finding that an attorney preparing a public offering statement for a proposed condominium owed a duty to prospective purchasers to state conditions correctly); *see also Zendell v. Newport Oil Corp.*, 226 N.J. Super. 431 (App. Div. 1988) (remanding the question of whether a law firm which provided legal assistance in a partnership offering and allowed an offering of unregistered securities was negligently liable even though no fiduciary or attorney-client relationship existed between the purchasers and the law firm); *see also Albright v. Burns*, 206 N.J. Super. 625 (App. Div. 1986) (finding that an attorney may be liable to a decedent's estate when, notwithstanding an absence of privity, the attorney knowingly facilitated improper transactions involving the holder of the decedent's power of attorney); *see also Stewart v. Sparro*, 142 N.J. Super. 581 (App. Div.), *certif. den.*, 72 N.J. 459 (1976) (finding that the failure of attorney for purchasers of a corporation to advise sellers' attorney within a reasonable time that all efforts obtain to essential signatures on a bond and mortgage "h[ad] been unproductive[;] failure to offer to return the documents[;] and, more importantly, purchasers' attorney's [decision to] participat[e] in the preparation and execution of the corporate second mortgage to purchasers, despite the fact that he was still in possession of the documents to which sellers were entitled," gave rise to a cause of action in negligence on the part of the sellers against the purchasers' attorney).

decided matters within the same action should continue to govern. (*Id*. at 5) (citations omitted). The Fleischmann Defendants posit that World Wide's Third-Party Complaint seeks the same relief sought in their previously dismissed crossclaims. (*Id.* at 6.) They further point to World Wide's incorporation of STGC's Amended Complaint, submitting that the proposed Third-Party Complaint is too reliant on previously dismissed claims to succeed and should be barred by the established law of the case. (*Id*.)

The Fleischmann Defendants contend that the motion is comprised of "conclusory allegations" and "fail[s] to provide any factual predicate for the claims against Fleischmann." (*Id.* at 1.) According to the Fleischmann Defendants, World Wide's Third-Party Complaint fails to establish any ground for indemnification or contribution, because such claims are premised on the allegation that "WWLT unilaterally sent funds to Fleischmann which were thereafter not sent to PrivCap." (*Id*. at 7.)

Moreover, as to the claims for indemnification, the Fleishmann Defendants maintain that World Wide has fallen short of satisfying its burden of proof for its claims of indemnification, as: (1) World Wide has failed to present evidence of either a contractual or other special relationship between themselves and the Fleischmann Defendants (*id.*), and (2) pursuant to the District Court's Memorandum Opinion, "any possible duty [they might owe] would be owed to PrivCap" (*id*. at 7-8).

As to the claims for contribution, the Fleischmann Defendants argue that because the underlying complaint includes economic damages sought by STGC from World Wide for breach of the Agency Agreement—an Agency Agreement to which the Fleischmann Defendants were not a party, World Wide's claim for contribution must fail. (*Id*. at 7.)

As to World Wide's claims of negligence, conversion, or fraud, the Fleischmann Defendants assert that the proposed Third-Party Complaint "mimic[s] Stewart Title's allegations in the Amended Complaint" but fails to provide any further factual basis in support of its claims. (*Id*. at 8.)  Absent World Wide's proposed pleading incorporating additional detail and factual allegations, the Fleischmann Defendants posit that World Wide's proposed third-party claims must fail.

The Fleischmann Defendants contend that World Wide fails to prove any new, probative detail as to how the Fleischmann Defendants owed a duty to World Wide which it subsequently breached.  (*Id*. at 10.)  It is the Fleischmann Defendants position that any reliance on the Certification of Juan Polistico is unavailing, considering the District Court's prior analysis of same and that World Wide fails to mention Polistico in its proposed Third-Party Complaint. (*Id.* at 10-11.)

Finally, the Fleischmann Defendants argue that the cases cited by World Wide in support of its motion are unpersuasive to establish a duty of care.  Specifically, the Fleischmann Defendants aver that each case involves instances in which lawyers took "affirmative steps to induce reliance by non-clients because the attorneys represented parties in the underlying proceedings," whereas "it is undisputed that Fleischmann did not represent any parties concerning the underlying mortgage transactions."  (*Id*. at 11.)

## II.   ANALYSIS

### A.  Basis for Impleader

Pursuant to Federal Rule of Civil Procedure ("Rule") 14, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a)(1). "A third-party claim may be asserted

under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied." *F.D.I.C. v. Bathgate,* 27 F.3d 850, 873 (3d Cir.1994).

"The purpose of Rule 14(a) is to avoid circuity of action and multiplicity of litigation." *Spencer v. Cannon Equip. Co.*, Civ. No. 07-2437, 2009 WL 1883929, at *2 (D.N.J. June 29, 2009) (citations omitted). "A third-party claim may be asserted under Rule 14(a) only when the third-party's liability is in some way dependent on the outcome of the main claim or when the third-party is secondarily liable to defendant." *F.D.I.C.,* 27 F. 3d at 873; *see Meehan v. Bath Auth., LLC*, Civ. No. 18-17444, 2021 WL 130483, at *1 (D.N.J. Jan. 14, 2021).

Word Wide moves for leave to file a third-party complaint on a proper theory of impleader. STGC's complaint alleges:

- World Wide has breached the Agency Agreement by, among other things, (a) failing to ensure that the Prior Mortgages were paid off and released of record as required by the title insurance commitment; and (b) failing upon demand to repay to STGC the amount of the Loss described above. (Am. Compl., at ¶ 67; Docket Entry No. 4);
- As a result of World Wide's breach of the Agency Agreement, World Wide is indebted to STGC in the amount of $1,006.950.00, plus interest, and the attorneys' fees and costs incurred by STGC in this action. (*Id.* at ¶ 68);
- World Wide acted negligently, and failed to exercise due care by, among other things, failing to ensure that PrivCap actually received the funds for the payoff and release of the Prior Mortgages and that PrivCap had authorized the payoff instructions which directed payment to be sent to the Law Firm. (*Id.* at ¶ 71);
- As a result of World Wide's negligence, STGC suffered damages in the amount of $1,006.950.00. (*Id.* at ¶ 72.)

As World Wide alleges that it failed to pay off the Prior Mortgages due to the Fleischmann Defendants' alleged negligence, conversion and fraud, entitling World Wide to contribution and indemnification, such a theory is a proper basis to seek leave to file a third-party complaint. A

third-party plaintiff may "set forth a claim of secondary liability under a theory of indemnification, contribution, or other theory of derivative liability." *Churchill Downs, Inc. NLR Entertainment, LLC v. Carstanjen*, Civ. No. 14-3442, 2015 WL 5854134, at *6 (D.N.J. Oct. 5, 2015) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978)); *Pier Renaissance LP v. Tutor Perini Bldg. Corp.*, Civ. No. 14-1703, 2017 WL 11812255, at *2 (D.N.J. Dec. 28, 2017). Such is the case here.

Since World Wide moves for leave to file a third-party complaint on a proper theory of impleader, the Court must then determine whether the equitable factors support granting leave to file the third-party complaint. *See Hitachi Cap. Am. Corp. v. Nussbaum Sales Corp.*, Civ. No. 09-731, 2010 WL 1379804, at *4 (D.N.J. Mar. 30, 2010) (evaluating basis for impleader prior to analyzing the equitable factors for impleader); *see also Naramanian v. Greyhound Lines, Inc.*, Civ. No. 07-4757, 2010 WL 4628096, at *4 (E.D. Pa. Nov. 15, 2010) ("If the court finds that a substantive basis for impleader exists, the court must then determine if the equitable factors support such a decision").

### B. Threshold Consideration: Standing for Proposed Third-Party Defendants' Opposition

As a preliminary matter, the Court considers whether the Fleischmann Defendants— former Defendants and current non-parties to the action—have standing to file an opposition to World Wide's motion. World Wide did not reply to the Fleischmann Defendants' Opposition nor challenge whether the Fleischmann Defendants have standing to file an opposition. Despite World Wide's and the Fleischmann Defendant's lack of briefing on the issue of standing, the Court briefly addresses same.

In the context of motions for leave to amend the complaint, courts in this jurisdiction have found that proposed defendants do not have standing to oppose such motions, "because they are not yet named parties." *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, Civ. No. 13-5592,

2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (citing *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P .C.,* 246 F.R.D. 143, 146 n. 1 (E.D.N.Y. 2007) (citation omitted), and *Vasquez v. Summit Women's Ctr., Inc.,* Civ. No. 301–955, 2001 WL 34150397, at *1 n. 1 (D. Conn. Nov. 16, 2001) (citation omitted)); *Malek v. Chef's Roll, Inc.,* Civ. No. 18-03205, 2021 WL 822787, at *14 (D.N.J. Mar. 4, 2021); *Klemmer v. MGM Resorts Int'l, Inc.*, Civ. No. 22-7363, 2024 WL 2022748, at *3 (D.N.J. May 7, 2024).

At least one court in this jurisdiction has extended and applied this same principle to motions for leave to file a third-party complaint. *Sevenson Env't Servs., Inc. v. Watersolve, LLC*, Civ. No. 16-5158, 2019 WL 11705907, at *1 n.1 (D.N.J. Nov. 25, 2019) (noting that proposed third-party defendants lack standing to oppose motion for leave to file a third-party complaint).

However, in interpreting this principle, courts have differentiated non-parties who are "entirely new" from non-parties who are "previously dismissed defendants." *See Bullock v. Ancora Psychiatric Hosp.*, Civ. No. 10-1412, 2012 WL 12897881, at *5 (D.N.J. Dec. 20, 2012); *see also CBD & Sons, LTD. v. Setteducati*, Civ. No. 18-4276, 2020 WL 6277844, at *5 (D.N.J. Sept. 28, 2020), *report and recommendation adopted*, Civ No. 18-4276, 2021 WL 2566722 (D.N.J. June 23, 2021).

As the Court in *Bullock* articulated:

> [U]nlike the case where an entirely new party is being added by way of amendment, Plaintiff is seeking to add parties who had previously been dismissed from the case. For all of the previously dismissed Defendants, the District Court either approved the voluntary dismissal or affirmatively dismissed Defendants by way of its Opinion and Order . . . Therefore, the Court finds that these previously dismissed Defendants do not squarely fit in the general category of non-parties that are precluded from opposing a motion to amend. Rather the Court shall consider the previously dismissed Defendants' opposition to Plaintiff's motion to amend to the extent the opposition raises futility that is apparent from the face of the proposed TAC.

*Bullock,* 2012 WL 12897881, at *5.

Similarly, pursuant to the District Court's Order and Memorandum Opinion, the Fleischmann Defendants were previously dismissed from the action.  Accordingly, the Court finds that the Fleischmann Defendants have standing, because they are previously dismissed Defendants not fitting the exact category of non-parties ordinarily prohibited from opposing World Wide's motion for leave to file a third-party complaint.  The Court shall consider the Fleischmann Defendants' opposition to the extent the opposition argues the proposed Third-Party Complaint, as pled, is futile or obviously unmeritorious.

### C.  Leave to File Third-Party Complaint

Under Rule 14, when a Third–Party Complaint is not filed within 14 days after a defendant's service of its original answer, "the decision to grant leave to file a Third–Party Complaint rests within the sound discretion of the Court."  *Hitachi Capital Am. Corp.*, 2010 WL 1379804, at *5 (citation omitted); Fed.R.Civ.P. 14(a)(1).  "[L]eave to [implead] should be freely given when justice so requires." *Panchisin v. Torres*, Civ. No. 11-5144, 2012 WL 5880346, at *2 (D.N.J. Nov. 20, 2012) (citing *Spencer,* 2009 WL 1883929, at *2-3).  Yet, "[l]eave to . . . implead a third-party [is] not automatic." *Id.*

To determine whether leave should be granted, courts consider the following factors:

"'(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff.'" *Spencer,* 2009 WL 1883929, at *2; *Igenomix, LLC v. Senergene Sols., LLC*, Civ. No. 21-20495, 2023 WL 4744283, at *3 (D.N.J. July 25, 2023) (quoting *Meehan,* 2021 WL 130483, at *2).  In addition to the foregoing factors, the Court must also consider whether the third-party claims are "obviously unmeritorious." *Ernest Bock & Sons, Inc. v. Dean Enterprises, Inc*., Civ. No. 22-4739, 2023 WL

4268250, at *2 (D.N.J. June 29, 2023) (citing *Wilson v. Beekman*, 198 F. App'x 239, 241 (3d Cir. 2006) (citation omitted); *see Ryan v.* Collucio, 183 F.R.D. 420, 423 (D.N.J. 1998) (analyzing motion for leave to file a Third-Party Complaint under a futility standard).

### a. Timeliness

On November 8, 2023, the Court, with the consent of all parties, entered a Scheduling Order.  (Docket Entry No. 52).  The Scheduling Order provided in part: "Motions to amend or add parties shall be filed on or before December 1, 2023."  (*Id.*)  On November 30, 2023, World Wide requested a fifteen-day extension to file its present motion for leave to file a third-party complaint (Docket Entry No. 53), which the Court granted *nunc pro tunc* on December 20, 2023 (Docket Entry No. 55). On December 7, 2024, World Wide filed its present motion. (Docket Entry No. 54).

Accordingly, considering the foregoing procedural history, the Court finds that World Wide's motion is timely, as World Wide filed its motion within the prescribed and extended filing deadline.

### b. Probability of Trial Delay

"[D]elay is inevitable in most if not all Rule 14 situations." *Spencer*, 2009 WL 1883929, at *4. However, "[i]f the inevitable delay and complexity were dispositive considerations . . . few Rule 14(a) motions would be granted." *Id.*  Therefore, both factors "must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy." *Id.*; *Hickerson-Cooper v. Dollar Gen. Corp.*, Civ. No. 22-5755, 2024 WL 2874035, at *4 (D.N.J. June 7, 2024).

Generally, courts in this jurisdiction have found that trial delay exists where fact discovery has closed, and joinder would require the discovery process to be reopened.  *Compare Hercules Inc. v. Del. Valley Scrap Co.*, Civ. No. 08-4391, 2009 WL 10690434, at *1 (D.N.J. Sept. 23, 2009)

("[G]ranting this motion will in no way delay trial as a trial date has not been set and the discovery deadlines can be extended."), *with Meehan*, 2021 WL 130483, at *2 (finding that the potential for trial delay existed where fact discovery had closed, and joinder would, in essence, "[return] the parties to the beginning of the discovery process"), *and Campbell v. New Jersey Transit Rail Operations Inc.,* Civ. No. 17-5250, 2021 WL 5413983, at *3 (D.N.J. Nov. 18, 2021) (finding that trial delay existed where fact discovery had closed, and the discovery process would have to be reopened). Here, discovery is ongoing, and no pre-trial conference date or trial date has been set. The Court finds that any potential trial delay is *de minimis* and does not bar World Wide's Third-Party Complaint.

### c.  Potential for Complications at Trial

"[I]mpleading a third party will add some level of complexity to the trial." *Mechin v. Carquest Corp.*, Civ. No. 07-5824, 2010 WL 3259808, at *7 (D.N.J. Aug. 17, 2010) (citing *Hitachi Capital Am. Corp.*, 2010 WL 1379804, at *6). "Considerations involving the inevitable consequences of joinder, including greater trial complexity, "must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy." *Id.* (citing *Spencer,* 2009 WL 1883929, at *7).

To note, the parties do not address this factor in their arguments raised in support or opposition of World Wide's motion. Nevertheless, as World Wide's third-party claims against the Fleischmann Defendants involve the same factual circumstances as alleged in STGC's Amended Complaint and do not substantially complicate the legal issues involved in this case, the Court finds that this factor weighs in favor of joinder.

**d. Meritoriousness of World Wide's Third-Party Claims and Prejudice to Original Plaintiff**

In analyzing the merits of third-party claims, courts in this jurisdiction have applied the same futility standard applied to motions to amend. *See Apollo Underwriting Ltd. v. Pats & Sons Gen. Cont. LLC*, Civ. No. 21-13723, 2022 WL 3273885, at *2 (D.N.J. Aug. 11, 2022) (citing *Aguirre v. Bergen Marble & Granite, Inc.*, Civ. No. 20-7476, 2021 WL 5918473, at *2 (D.N.J. Dec. 14, 2021); *see also Panchisin*, 2012 WL 5880346, at *2; *see also Crocker v. Kooltronic, Inc.,* Civ. No. 09-6579, 2011 WL 689623, at *2 (D.N.J. Feb. 18, 2011).

"'Futility' means that the complaint . . . would fail to state a claim upon which relief could be granted.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). "To determine whether a proposed [third-party complaint] is futile, the Court applies the same standard as a motion to dismiss under Rule 12(b)(6)." *Gibbs v. Massey*, Civ. No. 07-3604, 2009 WL 838138, at *3 (D.N.J. Mar. 26, 2009) (citing *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.*, 380 F. Supp. 2d 457, 462 (D.N.J. 2005)).

"The Court therefore [must] accept all factual allegations as true 'as well as the reasonable inferences that can be drawn from them.'" *Id.* (quoting *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001)). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civ. No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

### i. Count I: Negligence

To sustain a negligence claim, a plaintiff must establish "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." (Mem. Op. of 04/28/2023, at 5) (citations omitted).

In its Opinion, the District Court focused on whether the Fleischmann Defendants owed a duty of care to Plaintiff STGC. The District Court, however, did not expound on whether the Fleischmann Defendants owed a duty of care to World Wide stating:

> The crossclaims do not provide any detail or particularity as to the nature of the relationship between the Fleischmann Defendants and World Wide that would substantiate crossclaims for indemnification and contribution, nor do the crossclaims provide any factual assertions against the Fleischmann Defendants.

(*Id.* at 12.)

In its proposed Third-Party Complaint, World Wide alleges:

- Each of the properties at issue at all relevant times was encumbered by a mortgage in favor of PrivCap Funding, LLC, which PrivCap assigned to PS Funding. (World Wide's Proposed Third Party Compl., at ¶ 8);
- At the time of the closings, either the proposed Third Party Defendants or Defendant Selevan provided to World Wide the payoff instructions, attached to the amended complaint as Exhibits G and H. The payoff instructions for the PrivCap mortgages directed that the funds be sent to the proposed Third Party Defendant Law Firm. (*Id.* at ¶ 9);
- Pursuant to the payoff instructions, World Wide sent funds to the Third Party Defendants for the purpose of satisfying the PrivCap mortgages. (*Id.* at ¶ 10);
- The Third Party Defendants did not, despite instructions from World Wide, send the money to PrivCap in order to satisfy the mortgages. The money sent by World Wide to the Third Party Defendants was sent to individuals and entities, who were strangers to the transaction. (*Id.* at ¶ 11);
- Third Party Plaintiff, World Wide, provided funds to Fleischmann and the Law Firm for satisfaction of the PS Funding mortgages and reasonably relied on Fleischmann and the Law Firm to forward the funds to PS Funding. (*Id.* at ¶ 17);

16

- Fleischmann and the Law Firm were negligent in failing to remit the payoff funds to PrivCap or PS Funding to pay off the prior mortgages. (*Id.* at ¶ 18.)
- [T]he Third Party Plaintiff demands judgment against the Third Party Defendants for contribution and indemnification of any funds that the Third Party Plaintiff is adjudged to be liable to the Plaintiff for the transactions described above. (*Id.* at p. 4.)

The District Court previously instructed, "To sustain a negligence claim, a plaintiff must establish '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" (Mem. Op. of 04/28/2023, at 5) (citation omitted). "The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Kraft v. Wells Fargo & Co.*, Civ. No. 16-05729, 2019 WL 3453271, at *5 (D.N.J. July 31, 2019) (quoting *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010)); (Mem. Op. of 04/28/2023, at 5).

To determine whether a duty of care was owed, courts will look at several factors such as foreseeability and fairness. "Foreseeability as it impacts duty determinations, refers to 'the knowledge of risk to be apprehended.'" *Jasper v. Bank of Am. Corp.*, Civ. No. 20-2842, 2020 WL 5868849, at *2 (D.N.J. Oct. 2, 2020) (quoting *Clohesy v. Food Circus Supermarkets, Inc.*, 694 A.2d 1017, 1021 (N.J. 1997)). The presence or absence of foreseeability is not dispositive as to whether a duty of care exists, but "[s]ubsumed in the concept of foreseeability are many of the concerns we acknowledge as relevant to the imposition of a duty: the relationship between the plaintiff and the tortfeasor, the nature of the risk, and the ability and opportunity to exercise care." *Id.* (quoting *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1294 (N.J. 1994)).

Pursuant to New Jersey law, the threshold inquiry of whether a person owes a duty of reasonable care towards another, "turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public

17

policy." *Kraft*, 2019 WL 3453271, at *5 (quoting *Holmes*, 598 F.3d at 118). Ultimately, "[t]he determination of whether a duty of care exists is 'quintessentially a question of law for the court.'" *Wilson v. Consol. Rail Corp. (In re Paulsboro Derailment Cases)*, Civ. No. 13-784, 2013 WL 5530046, at *2 (D.N.J. Oct. 4, 2013) (quoting *Highlands Ins. Co. v. Hobbs Grp.*, LLC, 373 F.3d 347, 351 (3d Cir. 2004)).

Whether the Fleischmann Defendants owed World Wide a duty of care is a fiercely contentious point of dispute. (*See* World Wide's Mov. Br., at 7-9); (*See also* Fleischmann Defs.' Opp'n Br., at 8-11).

The Court must determine whether the Third-Party Complaint contains sufficient factual allegations to state a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1949; *Duran*, 2010 WL 918444, *2. Based on the Court's review of World Wide's Third-Party Complaint, the Court finds that World Wide fails to sufficiently allege that the Fleischmann Defendants owed World Wide a duty of care to support a negligence claim.

Attorneys may owe a duty of care to non-clients in situations in which the attorneys know or should know that the non-client would rely on the attorney's representations, and the non-client is not too remote from the attorney to be entitled to protection. *Petrillo v. Bachenberg,* 139 N.J. 472, 483–84, 655 A.2d 1354 (1995); *Davin, L.L.C. v. Daham*, 329 N.J. Super. 54, 74, 746 A.2d 1034, 1044 (App. Div. 2000).

To the extent that World Wide claims that the Fleischmann Defendants provided the payoff instructions to World Wide, the Court finds that said allegation lacks obvious merit and if permitted as pled, would be inequitable, would not promote judicial efficiency, and would be prejudicial to STGC—the original Plaintiff. World Wide, in its Answer to STGC's Amended Complaint, admits

to STGC's allegation that Defendant Selevan provided the payoff instructions. (*Compare* Am. Compl., at ¶¶ 35, 37, *with* World Wide's Ans., at ¶¶ 35, 37; Docket Entry No. 5).

Of note, World Wide has not requested leave to amend its Answer to STGC's Amended Complaint nor has World Wide made any effort to explain or reconcile this contradiction. Contrarily, and on more than one occasion, World Wide in its own brief submitted in support of its present motion admits that: "[D]efendant, Andrew Selevan, provided payoff instructions to World Wide, so that the prior mortgages could be paid off" (World Wide's Mov. Br., at 3), and "The payoff instructions came from Mr. Selevan" (*Id.* at 5).

World Wide also attempts to rely on the attached certification of Juan Polistico ("Polistico") and the depositions of David Fleischmann, Esq. ("Fleischmann") and Aaron Schlusselberg, Esq. ("Schlusselberg") to support its claims.

As the District Court highlighted in discussing STGC's Amended Complaint, and similar here, Polistico is not mentioned at all in World Wide's proposed Third-Party Complaint.[3]  But even considering the Polistico Certification, same directly militates against World Wide's

---

[3] The Court notes that any reliance on the Polistico Certification is seemingly impermissible. "In determining futility, the Court considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon the same." *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Patrick v. Equifax Info. Servs., LLC*, Civ. No. 23-4092, 2024 WL 2077036, at *8 n.7 (D.N.J. May 9, 2024)*; see also Love v. Does*, Civ. No. 17-1036, 2020 WL 5760447, at *3 (D.N.J. Sept. 28, 2020) (citation omitted). Neither Polistico nor his Certification are attached to, mentioned, and/or seemingly relied upon in the Third-Party Complaint.  Additionally, while the Polistico Certification was filed in a related state court proceeding, courts in this jurisdiction have found that courts may take judicial notice of state court proceedings to the extent of their dockets, opinions, and orders. *See Smith v. Lynn*, 809 F. App'x 115, 117 (3d Cir. 2020) (finding that a district court was permitted to review matters of public record and to take judicial notice of a prior judicial opinion filed in state court); *see also Shaikh v. Germadnig*, Civ. No. 22-2053, 2023 WL 4534127, at *14 (D.N.J. July 13, 2023)(procedural history omitted)(noting that the court may rely on orders and opinions entered in related proceedings).  Nevertheless, even considering the Polistico Certification, the Court finds same to be unpersuasive for the reasons set forth in this Memorandum Opinion herein.

allegation that the Fleischmann Defendants provided the payoff instructions to World Wide.  In his certification, Polistico—the closing manager for World Wide—states, "Attached as Exhibits C and D are copies of the payoff statement for the two PivCap mortgages which were provided to World Wide by Andrew Selevan, Esq.  Mr. Selevan was the attorney for the entities which owned the properties."  ("Polistico Cert.," Ex. D, at ¶ 7; Docket Entry No. 54-10).    The Polistico Certification directly contradicts World Wide's allegation that the Fleischmann Defendants provided the payoff instructions.

Mr. Fleischmann's deposition also fails to provide any basis for World Wide's factual allegation.  In the deposition, Fleischmann was asked: "Who provided the wire instructions to World Wide?" To which Fleischmann answered: "I don't know."  (Fleischmann Dep. 19:22-24, Ex. B; Docket Entry No. 54-8).

Similarly, Mr. Schlusselberg's deposition lacks probative value, considering the deposition fails to mention who provided the payoff instructions to World Wide. (*See generally*, Schlusselberg Dep., Ex. C; Docket Entry No. 54-9).

While the Court appreciates that factual disputes may not be resolved at this stage of the litigation, the Court is also bound to determine if the claims lack obvious merit and/or if the original Plaintiff would be prejudiced in permitting third-party plaintiff leave to file its third-party complaint.  Ultimately, the fact that "Defendant Selevan provided the payoff instructions to World Wide," has proceeded undisputed by World Wide; has been and continues to be admitted by World Wide in its own Answer, filings, supporting briefs, and supporting documentation; and has been relied upon by both Plaintiff and the Court alike for the entirety of the litigation and in making dispositive rulings.

Indeed, in Its Opinion granting the Fleischmann Defendants' Motion to Dismiss, the District Court stated:

> [A]t the Closings, counsel for the Borrowers, Selevan, directed World Wide to submit payment to the Fleischmann Law Firm to satisfy the outstanding Prior Mortgages with PrivCap. ([Am. Compl.] ¶¶ 33-36.) Selevan also directed World Wide to submit the payoff value to the Fleischmann Law Firm, an event which does not seem to be in dispute. (*Id.* ¶¶ 34-37.)

(Mem. Op. of 04/28/2023, at 7). Notably, in highlighting the undisputed nature of the event, the District Court citation included paragraphs 35 and 37 of STGC's Amended Complaint, which state respectively: "[a]t the Closings, Selevan provided World Wide with payoff instructions . . ." (Am. Compl., at ¶ 35), and "[t]he Selevan Payoff Instructions directed that the payoff amounts due to PrivCap be sent to the law firm" (*id.* at ¶ 37).

Considering the foregoing, to permit World Wide to assert that the Fleischmann Defendants provided the payoff instructions to World Wide at this stage would be inequitable, would not promote judicial efficiency, and would be prejudicial to STGC, the original Plaintiff.

Moreover, to the extent that World Wide relies on the Polistico Certification to establish that the Fleischmann Defendants owed World Wide a duty of care which stemmed from a conversation Polistico allegedly had with Schlusselberg on September 17, 2018, such reliance is lacking. The Court again notes that World Wide fails to incorporate this factual allegation in its Third-Party Complaint. Significantly, the Third-Party Complaint fails to even vaguely allege that World Wide—including Polistico—and the Fleischmann Defendants communicated in 2018 and/or at any time. As noted, "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran*, 2010 WL 918444, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). As World Wide's pleading fails to

allege in any manner that Polistico or World Wide communicated with the Fleischmann Defendants, World Wide's citation to the Polistico Certification to establish that the Fleischmann Defendants' made representations and/or that World Wide relied upon same is unavailing.

Accordingly, the Court finds that World Wide has failed to adequately allege sufficient facts to plausibly establish that the Fleischmann Defendants made any representation to World Wide, a non-client.  As mentioned, attorneys may owe a duty of care to non-clients in situations in which the attorneys know or should know that the non-client would rely on the attorney's representations, and the non-client is not too remote from the attorney to be entitled to protection. *Petrillo*, 139 N.J. at 483–84, 655 A.2d 1354; *Davin, L.L.C.*, 329 N.J. Super. at 74, 746 A.2d at 1044.  As an attorney's representation is essential for the creation of a duty of care owed to a non-client, considering that the Third-Party Complaint fails to allege that the Fleischmann Defendants made any representation to World Wide, the Court finds that World Wide has failed to plausibly allege the Fleischmann Defendants owed World Wide, a non-client, a duty of care to support a negligence claim.

Finally, to bolster their claim that the Fleischmann Defendants owed a duty of care, World Wide provides several examples in which courts found lawyers to owe a duty of care to non-clients.  (*See supra* p. 6 n.2 and accompanying text). Notably, all of these cases involved findings of a duty where the transaction was a purchase or prospective purchase, and the attorney affirmatively participated in the transaction to a degree that would induce reliance by the non-clients.  This is not the case here.  Even accepting World Wide's proposed Third-Party Complaint's allegations as true, same show that World Wide—acting pursuant to the payoff instructions provided by Borrower's counsel, Defendant Selevan—unilaterally transferred funds to and without any prior or subsequent representations from the Fleischmann Defendants for the purpose

22

of paying off the preexisting PrivCap mortgages.[4]   The Court finds that such association fails to rise to the level of affirmative, reliance-inducing participation as exhibited by the attorneys in World Wide's cited examples.  Stated differently, in the context of this action, World Wide is too remote from the Fleischmann Defendants to find that the Fleischmann Defendants owed a duty of care.  The Court therefore finds that these cases are unpersuasive to establish that the Fleischmann Defendants owed a duty of care to World Wide.

World Wide's request for leave to file a third-party claim for negligence against the Fleischmann Defendants is **DENIED**, as the claim as pled is futile and lacks a meritorious basis.

### ii.   Count II: Conversion

"To maintain a claim for the conversion of money, a 'plaintiff must "establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner" and such "repudiation must be manifested in the injured party's demand for funds and the tortfeasor's refusal to return the monies sought.'" "  *Importers Serv. Corp. v. Aliotta,* Civ. No. 22-4640, 2024 WL 2765620, at *12 (D.N.J. May 30, 2024); *Vita v. Vita*, Civ. No. 21-11060, 2022 WL 376764, at *3 n.2 (D.N.J. Feb. 8, 2022) (quoting *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 432 (App. Div. 2011)); *see also First Am. Title Ins. Co. v. Sadek*, Civ. No. 11-1302, 2017 WL 6663899, at *4 (D.N.J. Dec. 29, 2017) ("[Conversion] breaks down into three essential elements: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of property without

---

[4] As mentioned, for the reasons set forth above, the Court finds World Wide's allegation that the Fleischmann Defendants provided the payoff instructions to World Wide—as it stands unsubstantiated and self-contradicted by its own Answer, supporting brief, and supporting documentation—would be inequitable, would not promote judicial efficiency, and would be prejudicial to STGC, the original Plaintiff.

authorization; and (3) that the taking was to the exclusion of the owner's rights to that property")
(citations omitted).

As the New Jersey Supreme Court has instructed:

> It is well settled that where possession of chattels is lawfully acquired, a
> demand therefor and refusal to deliver is generally necessary before an
> action in . . . conversion will accrue. A demand and refusal do not of
> themselves amount to a conversion, but are evidence from which a jury
> may find that a conversion had been committed. The demand, however,
> must be made at a time and place and under such circumstances as
> defendant is able to comply with if he is so disposed, and the refusal must
> be wrongful . . . The burden of proof of a demand and a refusal rests upon
> the plaintiff.

*Mueller v. Tech. Devices Corp.*, 8 N.J. 201, 207-08, 84 A.2d 620 (1951); *Meisels v. Fox Rothschild
LLP*, 240 N.J. 286, 304, 222 A.3d 649, 660 (2020) (citation omitted).

"Thus, to establish conversion when the property is lawfully acquired, demand becomes a
critical step." *Meisels*, 240, N.J. at 305 (citing *Mueller*, 8 N.J. at 207-08). "The demand is the
linchpin that transforms an initial lawful possession into a setting of tortious conduct." (*Id.*)

World Wide does not address the elements of conversion in its motion for leave to file a
third-party complaint. To be clear, World Wide has made no effort to try to explain how the
elements of conversion are satisfied. Nor has World Wide attempted to make a threshold showing
of a demand and refusal or explain why the demand-and-refusal requirement should be considered
futile in the context of this case. *See Meisels,* 240 N.J. at 305 (stating "[t]hat said, there are
circumstances, to be sure, where demand may be futile, but that is and must be viewed as an
exception.") (citation omitted).

Nonetheless, the proposed Third-Party Complaint alleges in pertinent part:

- Pursuant to the payoff instructions, World Wide sent funds to the Third
  Party Defendants for the purpose of satisfying the PrivCap mortgages.
  (World Wide's Proposed Third-Party Compl., at ¶ 10);

- The Third Party Defendants did not, despite instructions from World Wide, send the money to PrivCap in order to satisfy the mortgages. The money sent by World Wide to the Third Party Defendants was sent to individuals and entities, who were strangers to the transaction. (*Id.* at ¶ 11);
- On May 13, 2020, PrivCap commenced foreclosure actions. (*Id.* at ¶ 12);
- PS Funding made claims under the title policies to the Plaintiff, Stewart Title Guaranty Company, which retained counsel to defend the priority of the insured mortgages held by PS Funding. (*Id.* at ¶ 13);
- The Plaintiff paid PrivCap in excess of $1,000,000 in order to satisfy its mortgages. (*Id.* at ¶ 14);
- The Third Party Defendants transferred all or a portion of the payoff funds to recipients other than PrivCap or PS Funding. (*Id.* at ¶ 20.);
- The actions of the Law Firm and Fleischmann constitute a conversion of the payoff funds. (*Id.* at ¶ 21);
- [T]he Third Party Plaintiff demands judgment against the Third Party Defendants for contribution and indemnification of any funds that the Third Party Plaintiff is adjudged to be liable to the Plaintiff for the transactions described above. (*Id.* at p. 4.)

Even accepting the allegations of World Wide's proposed pleading as true, the Court finds that same fail to allege sufficient facts demonstrating that the Fleischmann Defendants exercised dominion or control over the funds without authorization. *see First Am. Title Ins. Co.*,2017 WL 6663899, at *4 ("[Conversion] breaks down into three essential elements: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property") (citations omitted); *see also Shrink Packaging Sys. Corp. v. Kist*, Civ. No. 22-04967, 2023 WL 5664733, at *8 (D.N.J. Sept. 1, 2023).  As discussed below, World Wide has failed to plausibly assert a claim of fraud against the Fleischmann Defendants.  Consequently, the proposed Third-Party Complaint is devoid of any cognizable conduct plausibly establishing that the Fleischmann Defendants obtained the funds unlawfully.  Thus, the demand-and-refusal requirement "[becomes] the linchpin that transforms an initial lawful possession into a setting of tortious conduct." *Meisels,* 240 N.J.

at 304.  Further, "[as] money is fungible[,] . . . the obligation of a plaintiff to make a demand of the firm for the money [is] not useless or futile."  *Id.* at 307.

World Wide fails to sufficiently allege that World Wide demanded for the return of the funds and that the Fleischmann Defendants refused same.  World Wide's proposed Third-Party Complaint does not include any allegation(s) that remotely suggests that a demand for the return of the funds was made by World Wide to the Fleischmann Defendants.  Nor does World Wide's supporting documentation suggest same.  Even if World Wide's supporting documentation suggested that a demand and refusal was tendered, which the Court finds same does not, World Wide fails to allege these facts in its pleading.  This failure to incorporate any factual allegations pertaining to the demand-and-refusal requirement into the proposed Third-Party Complaint is fatal to World Wide's conversion claim.

Based on the foregoing, the Court finds that World Wide has failed to plausibly allege the Fleischmann Defendants are liable for conversion.

World Wide's request for leave to file a third-party claim for conversion against the Fleischmann Defendants is **DENIED**, as the claim as pled is futile and lacks a meritorious basis.

### iii.   Count III: Fraud

Allegations of fraud require more detailed pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation." (Mem. Op. of 04/28/2023, at 9); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 (3d Cir. 2015) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). The particularity standard ensures that "defendants [are placed] on notice of the precise misconduct with which they are charged, and [are safeguarded] against spurious charges of immoral and

fraudulent behavior." *Id.* at 85 (quoting *Lum*, 361 F.3d at 223-24). To satisfy this heightened pleading standard, a plaintiff need not provide "every material detail of the fraud such as date, location, and time." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

"But still, in applying Rule 9(b), 'courts should be 'sensitive' to situations in which "sophisticated defrauders' may 'successfully conceal the details of their fraud." ... Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed.'"  (Mem. Op. of 04/28/2023, at 9); *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d at 216 (quoting *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1418 (3d Cir. 1997)).  At a minimum, the plaintiff must provide one of two things: either (1) "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue,' " *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (quoting *In re Rockefeller Ctr. Properties*, 311 F.3d at 217); or (2) some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud," *Heyman v. CitiMortgage, Inc.*, Civ. No. 14-1680, 2015 WL 5921199, at *6 (D.N.J. Oct. 9, 2015) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984)).

"In New Jersey, the five elements of common law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008) (internal citation and quotation omitted). Further, "[f]or an omission to have constituted fraud, the defendant must have had a duty to disclose the withheld information." *Heyman*, 2015 WL 5921199, at *7.

The Court finds that World Wide's proposed Third-Party Complaint fails to sufficiently allege fraud, specifically the first element of a common law fraud claim (material misrepresentation or omission).

The Court repeats the allegations provided above in Sections II (C)(d)(i)-(ii).  In addition, the proposed Third-Party Complaint alleges:

- The Third Party Defendants provided false closing instructions to the Third Party Plaintiff, with the intent that the Third Party Plaintiff would rely on the closing instructions. (World Wide's Third-Party Compl., at ¶ 23);
- The Third Party Plaintiff has been damaged as a result of the fraudulent acts of the Third Party Defendants as described above. (*Id.* at ¶ 24);
- [T]he Third Party Plaintiff demands judgment against the Third Party Defendants for contribution and indemnification of any funds that the Third Party Plaintiff is adjudged to be liable to the Plaintiff for the transactions described above. (*Id.* at p. 5.)

For the same reasons set forth above in discussing World Wide's negligence claim, to the extent World Wide alleges that the Fleischmann Defendants provided the payoff instructions or closing instructions, the Court finds that to permit such an allegation at this stage of the litigation would be inequitable, would not promote judicial efficiency, and would be prejudicial to STGC, the original Plaintiff.  Accordingly, outside of the foregoing allegation, the Court finds that World Wide pleading fails to allege that the Fleischmann Defendants made any representation—and, by extension, any material misrepresentation—to World Wide.  Nor does World Wide's proposed Third-Party Complaint provide any allegation regarding any material omission, in turn, failing to provide and/or satisfy the requisite specificity as required by Rule 9(b) for fraud claims.

Additionally, while World Wide's failure to allege in any manner that the Fleischmann Defendants made any material misrepresentation or omission to World Wide in its proposed pleading is dispositive on its claim, the Court notes that to the extent that World Wide relies on

28

the Politico Certification to establish the elements of fraud, World Wide still has not pled the elements of a fraud claim.

In discussing STGC's fraud claim alleged as to the Fleischmann Defendants, the District Court noted:

> Polistico avers that he "called the office of David Fleischmann, Esq. to confirm the wiring instructions. [Polistico] spoke with Aaron Schlusselberg, Esq. [("Schlusselberg")] an associate of Mr. Fleischmann. [Polistico] told Mr. Schlusselberg that [he] was calling to confirm the wire instructions for satisfaction of the PrivCap mortgages. Mr. Schlusselberg confirmed that the wire instructions provided on each of the payoff statements was correct." (Polistico Cert. ¶ 8.)

(Mem. Op. of 04/28/2023, at 11).

The District Court then instructed: "But even considering the Polistico Certification, Plaintiff still has not pled the elements of a fraud claim, because Plaintiff does not plead that Mr. Schlusselberg—who is also not identified in the Amended Complaint—had knowledge or belief of the falsity of the statement. (citations omitted)." (*Id.*)

Similar here, World Wide does not identify Schlusselberg in the Third-Party Complaint nor does World Wide plead that Schlusselberg had knowledge or belief of the falsity of the statement. Nor does the Fleischmann Deposition and/or Schlusselberg Deposition provide any support to World Wide's fraud claim, as both Fleischmann and Schlusselberg affirmatively denied having any recollection or knowledge of the purported conversation that allegedly occurred between Schlusselberg and Polistico in 2018. (Fleischmann Dep. 17:14-24); (Schlusselberg Dep. 17:8-18; 21:15-25; 22:1-5; 27:4-6).  Even if the Fleischmann Defendants spoke with World Wide at the time of the transaction, World Wide still has failed to plead sufficient facts to make a plausible claim that the Fleischmann Defendants had knowledge at the relevant time of any falsity or misrepresentation.

29

Finally, any reliance on the alleged email chain between World Wide and Schlusselberg in 2020 is unpersuasive to establish World Wide's claim for fraud, as: (1) World Wide neither references or makes any allegation as to these email communications in its proposed Third-Party Complaint nor attaches this email chain as an exhibit to its proposed Third-Party Complaint or present motion (*see supra* p. 19 n.3) (discussing the limited scope of the Court's document review); (2) World Wide's Third-Party Complaint specifically alleges that the Fleischmann Defendants provided false closing instructions; closing instructions that were provided two years prior to the email chain; and (2) World Wide fails to plead sufficient facts demonstrating how this email exchange satisfies the elements of fraud in the context of the proposed pleading's allegations.

For the foregoing reasons, the Court finds that World Wide has failed to plausibly allege that the Fleischmann Defendants are liable for fraud.

World Wide's request for leave to file a third-party claim for fraud against the Fleischmann Defendants is **DENIED**, as the claim as pled is futile and lacks a meritorious basis.

### iv.   Contribution

"Under the New Jersey Joint Tortfeasor Contribution Law, the right of contribution exists among joint tortfeasors." N.J. Stat. Ann. § 2A:53A-1–2; *Walsh Sec., Inc. v. Cristo Prop. Mgmt.*, Civ. No. 97-3496, 2009 WL 5064757 (D.N.J. Dec. 16, 2009).  "Joint Tortfeasor" is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  N.J. Stat. Ann. § 2A:53A-1–2; *Ernest Bock & Sons, Inc.*, 2023 WL 4268250, at *3 (citations omitted). The law provides a "cause of action for contribution . . . when two or more persons become liable in tort to

the same person for the same harm." *Lukacs v. Purvi Padia Design LLC*, Civ. No. 21-19599, 2023 WL 6439877, at *3–4 (D.N.J. Oct. 2, 2023).

A claim for contribution is viable "only where a proposed third party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff.' (citations omitted)" *City Select Auto Sales, Inc. v. David/Radall Assocs., Inc.*, Civ. No. 11-2658, 2015 WL 4507995, at *3 (D.N.J. July 23, 2015); *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, Civ. No. 22-4905, 2024 WL 1110902, at *14 (D.N.J. Mar. 14, 2024). "A claim for contribution requires a party to assert a claim in tort; the Joint Tortfeasor Contribution Law and Comparative Negligence Act only 'comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm.'" *Symbiont Sci. Eng'g & Constr., Inc.*, 2024 WL 1110902, at *14; *see Ernest Bock & Sons, Inc.*, 2023 WL 4268250, at *4 (citations omitted).

"[B]eing procedural in nature, Rule 14 itself does not create a right of contribution or indemnity; rather, a third-party plaintiff's right to relief must be cognizable under the substantive law.'" *City Select*, 2015 WL 4507995, at *3 (citing *Meyers v. Heffernan,* No. 12–2434, 2014 WL 3343803, at *10); *Symbiont Sci. Eng'g & Constr., Inc.*, 2024 WL 1110902, at *14.

As the Court finds that all of World Wide's claims raised in the Third-Party Complaint are futile and/or unmeritorious, with World Wide failing to allege any cognizable tort as to the Fleischmann Defendants, the Fleischmann Defendants are not "joint tortfeasors." World Wide's request for contribution is therefore futile. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, Civ. No. 97-3496, 2007 WL 951955, at *1 (D.N.J. Mar. 28, 2007) (finding that a party determined to be a non-joint tortfeasor cannot be liable to any codefendant for contribution) (citing *Resolution*

*Trust Corp. v. Moskowitz,* 845 F.Supp. 247, 251 (D.N.J.1994), *vacated in part, on other grounds,* Civ. No. 93–2080, 1994 WL 475811 (D.N.J. Aug. 31, 1994)); *see also Trustees of Princeton Univ. v. Tod Williams Billie Tsien Architects, LLP*, Civ. No. 19-21248, 2021 WL 9667971, at \*10 (D.N.J. Jan. 29, 2021) (denying claim for contribution as futile where the facts as alleged failed to establish that the third-party defendant could be deemed a joint tortfeasor); *see also Szaloczy v. KONE Elevators & Escalators*, Civ. No. 20-03815, 2021 WL 2680185, at \*8 (D.N.J. June 29, 2021) (dismissing claim for contribution where the Third-Party Complaint failed to allege tortious conduct of Third-Party Defendant that caused Plaintiffs' injuries).

To note, "[u]nder New Jersey law there are occasions when a contract claim may have attributes that will permit it to give rise to a claim for contribution." *Walsh Sec., Inc.*, 2009 WL 5064757, at \*7 (D.N.J. Dec. 16, 2009); *Szaloczy*, 2021 WL 2680185, at \*8. This exception has no bearing here as World Wide neither alleges that a contract existed between World Wide and the Fleischmann Defendants nor asserts a contract claim against the Fleischmann Defendants in its Third-Party Complaint.

World Wide's request for leave to file a third-party claim for contribution against the Fleischmann Defendants is **DENIED**, as the claim as pled is futile and lacks a meritorious basis.

### v.  Indemnification

"New Jersey recognizes a common law right to indemnity." *Lukacs*, 2023 WL 6439877, at \*3. This is an "equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *Id.* (citations omitted); *Symbiont Sci. Eng'g & Constr., Inc.*, 2024 WL 1110902, at \*14. In New Jersey, a claim for "[i]ndemnification is available in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied

right to indemnification." *Borough of Edgewater v. Waterside Constr., LLC*, Civ. No. 16-2782, 2021 WL 4059850, at \*11 (D.N.J. Sept. 3, 2021) (citing *Fireman's Fund Ins. Co v. 360 Steel Erectors, Inc.*, Civ. No. 14-5060, 2018 WL 1069417 at \*4 (D.N.J. Feb. 26. 2018)). "These 'special legal relationships' include 'principal-agent, employer-employee, lessor-lessee, and bailor-bailee.'" *Symbiont Sci. Eng'g & Constr., Inc.*, 2024 WL 1110902, at \*14 (citing *SGS U.S. Testing Co., Inc. v. Takata Corp.,* Civ. No. 09–6007, 2012 WL 3018262, at \*5 (D.N.J. July 24, 2012) *aff'd*, 547 F. App'x 147 (3d Cir. 2013)).  "[I]mplied indemnification by way of a special relationship is a 'narrow doctrine' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *SGS U.S. Testing Co., Inc.*, 2012 WL 3018262, at \*5; *see Katz v. Holzberg*, Civ. No. 13-1726, 2013 WL 5946502, at \*3 (D.N.J. Nov. 4, 2013) (citation omitted).

In its proposed pleading, World Wide offers no basis for asserting an indemnification claim. World Wide does not allege that the Fleischmann Defendants had a contractual obligation to indemnify it.  Nor does World Wide allege any special relationship between itself and the Fleischmann Defendants.  Once more, World Wide has made no effort to explain how its alleged relationship with the Fleischmann Defendants amounts to a special relationship as defined under the doctrine of implied indemnification.  As previously mentioned, even accepting World Wide's proposed Third-Party Complaint's allegations as true, same show that World Wide unilaterally transferred funds to and without any prior or subsequent representations from the Fleischmann Defendants for the purpose of paying off the preexisting PrivCap mortgages.  Based on the proposed pleading's allegations, the Court finds that any alleged relationship that World Wide had with the Fleischmann Defendants is too remote and peripheral to create a special legal relationship.

World Wide's request for leave to file a third-party claim for indemnification against the Fleischmann Defendants is **DENIED**, as the claim as pled is futile and lacks a meritorious basis.

### III.     CONCLUSION

For the reasons set forth above, as the Court finds World Wide's third-party claims to be futile and unmeritorious, World Wide's motion seeking leave to file a Third-Party Complaint against the Fleischmann Defendants is **DENIED**.  An appropriate Order follows.


Dated:  July 30, 2024


s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE**